Good morning. May it please the court, Charles Bonneau appearing for Petitioner and Appellant Alfred Nickson. I would like to focus this morning's argument on the combination of vague jury instructions and misleading argument by the prosecutor, which led this jury to convict Mr. Nickson of the murder of Kyle Billing based on his participation in an attempted robbery of Zhang's Market several hours earlier in the day. And we would submit that that was an unauthorized, improper, unsupported ground for this conviction. Why is it in connection with that attempted robbery as opposed to the one that was involved when he was shot? The case could have been tried strictly that the that Nickson was involved in an attempted robbery of Billing. And but that's not this case. It wasn't tried that way. Instead, the prosecutor resorted to a conspiracy theory. And and this is the crucial thing, is that the prosecutor alluded repeatedly to the robbery or attempted robbery of Zhang's Market. Well, in the context of saying, look, these folks woke up that day with Nickson needing money because he had just been fired and his mother had just tossed him out of the house. And so they went to Zhang's Market to see if that would work, didn't work, went to the hockey arena, got thwarted there, and they finally found somebody. But it was consistent with the scheme developed that morning to find somebody to rob. Could have been. Could have been. But the problem was that it was the whatever association between these people that started out was unraveling by the time they got to the light rail. Well, but the jury was given an instruction under normal conspiracy theory that you can withdraw and obviously resolve that against Nickson. But he didn't withdraw, even though that was your client's position. Again, he could have been convicted on several different theories, and the prosecution could have opted to go to the most straightforward one, which Judge Hugg referred to, the robbery or attempted robbery of Billing. But they didn't. They relied on other theories. It is perfectly clear from the charge that the charge focused on the billing and on robbing the victim. Well, we don't agree with that. But the theory was, that was in part argued, was that, you know, they just wanted to rob somebody of something. They wanted money. Right? Well. What's the problem with that? They, everybody wants money most of the time. So that was, that's not too hard. Most of us don't set out to rob a market or a hockey arena or the giant stadium or. The problem they had, the problem they had was whether this was continuing or not. And the prosecutor chose to advance a theory that they intended and attempted to rob the Zhang's market. And the instructions permitted that, because they referred to attempted robbery and natural and probable consequences. And then the prosecutor went on to say, is the robbery of a person a natural, that's billing, a natural and probable consequence of an agreement to rob a store, Zhang's market? And the answer is the same as it was before. Absolutely, absolutely. Now, what was the answer before? Well, he had argued to the jury already at length that there was a connection between these two. At ER 35, robbery of a store or an ice rink leads to the robbery of a person. ER 37, trying to rob a store, one of your guys might get a little antsy and rob a person. ER 38, robbery of billing was a natural and probable consequence of the, quote, plan to rob a business. You know what would probably help me? I mean, I'm aware of all that. What in just 25 words or less do you say was the problem? The problem was, the problem was that of the theories that the prosecution had to choose from, which were several. Never mind that. They're always there. I mean, we could go to the moon, too, but we're not going to do that. Well, they presented several. The problem with the trial was what? The problem is that this jury instruction refers to an attempted robbery but does not say the billing robbery. It could apply to any of the planned or attempted robberies during the day. Now, that's a suitable instruction. It's fine. Why is that not a state question? Why is it in front of me on habeas, if that's your real argument? Why is that not a state law question that the California Court of Appeals easily could have taken care of? It isn't even something I can look at. It's a federal question. The federal question comes from Bowie. And the federal question, therefore, comes from Bowie, which says, if there's a radical departure in what was said to the jury from what has been said before so that the defendant wouldn't have any idea about it, then we have a problem which is a federal problem. Well, I looked at People v. Kauffman and I compared that to what the instruction was. And, frankly, they copied it. I mean, the words are the same. So I'm through the federal issue now. Now you're arguing about whether they said the instruction right under state law. And I'm having a tough time understanding why that's a habeas question. Okay. You just summarized our argument one. Now, what I'm addressing here is argument two. And the main authority which we cited in a letter to the court is Brown v. Payton. And that is the letter. Okay. I'm still having trouble finding, realizing, or trying to get in my mind why this is federal habeas relief. And your own argument is the state instruction about its own law, even if okay, is wrong. That's a state question. That's not a habeas question. What Brown v. Payton said is that if you have a state instruction, which we, the United States Supreme Court, have passed on, it's okay. But it has the potential to be exploited and used in an improper way. And that's what happened in Brown v. Payton. That's what happened here. The prosecutor used this instruction, saw the opportunity, because it doesn't say robbery and billing. So he said, he told the jury, this, what could have happened here is that they agreed to rob the Jones Market. They got started. And then later in the day, there was a natural and probable consequence, which was somebody else got robbed. He said, that's natural and probable. You could foresee that. And that was a result of the Jones Market agreement, robbery. I think everybody agrees that that's wrong under state law or under, that's never been justified. And our position here is that under Brown v. Payton, when the prosecutor's argument takes that route, twists the jury instruction, takes the jury off down a road that they shouldn't go, then it's a Federal issue. I can reserve the rest of my time if I may. Thank you. Good morning. May it please the Court. Justin Riley on behalf of the Warden. With regard to the instructional error issue, I think the perceived ambiguity appellant is trying to capitalize on is that the prosecutor   Both of them relied on natural and probable consequences. One was the natural and probable consequence of a conspiracy. And the other was the natural and probable consequence of aid or in a better liability. They're similar, but slightly different. Now, appellant's argument weaves in and out of both of those theories and tries to create some sort of ambiguity. But as the state court and the district court both found, the instructions given by the trial court and the argument by the prosecutor separated out those natural and probable consequences theories sufficiently such that it was not reasonably probable that the jury would have read the instructions so as to confuse the two. That conclusion by the state court was reasonable. I'd love to answer any further questions on either of the two issues. I have no questions. Thank you. I submit it. So thank you, Mr. Reilly. Odo. Your Honor, I would agree with the State's argument up to a point. The natural and probable consequence theme ran through this argument and it ran through the trial. And it was part of the conspiracy theory that was advanced. It was also part of the aid or in a better theory. But where I part company with the State is saying that it was limited in any way to aid or in a better to the killing of Billing. If this had been a strong case of robbery, murder as to Billing, that's what we wouldn't be here talking about conspiracy. We wouldn't be here talking about Zhang's market. We're only here talking about Zhang's market because it's not a strong case of aid or in a better and robbery, murder or Billing. And the instruction permitted it to be used to arrive at criminal liability based on the robbery of the market. And that's an unauthorized basis for the conviction. Brown v. Payton took issue with the court giving instructions which were then exploited in this way. Thank you. Thank you. Thank you, counsel. The matter just argued will be submitted.
judges: Hug, Rymer, Smith N. R.